## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **THE ESTATE OF BLANCHIA SMITH,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 7:16-cv-01774-RDP** |
| | } | |
| **FOREST MANOR, INC., et al.** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on Defendant Forest Manor, Inc.'s Motion for Summary Judgment. (Doc. # 47). The motion has been fully briefed (*see* Docs. # 47, 52, 54), and it is ripe for decision. This case arises from a fall Blanchia Smith suffered on December 18, 2015. Defendant Forest Manor moves for summary judgment on two federal claims Plaintiff[1] has brought against it, as well as a state-law breach of contract claim. After careful review, and for the reasons explained below, the court concludes that Defendant Forest Manor's Motion for Summary Judgment is due to be granted in part. Defendant Forest Manor is entitled to summary judgment on Plaintiff's federal-law claims. Plaintiff's state-law claims, including the challenged breach of contract claim, are due to be dismissed without prejudice so that they may be refiled in state court.

## I.     Factual Background

Blanchia Smith was admitted to Forest Manor, a long-term care facility, in 2012. (Docs. # 47 at 6 (undisputed statement of fact); 52-1 at 10). Forest Manor is a for-profit facility open to

---

[1]  To clarify, this Memorandum Opinion refers to the Estate of Blanchia Smith as "Plaintiff" and Blanchia Smith as "Smith."

the public, and it receives federal funding. (Docs. # 52-8 at 4; 52-10 at 22). It is subject to both the Rehabilitation Act and Title III of the Americans with Disabilities Act ("ADA"). (Doc. # 52 at 9 (undisputed statement of fact)). Yet, Forest Manor concedes that it has no policies in place to ensure its compliance with the ADA or the Rehabilitation Act. (Doc. # 52-10 at 16-18). It did not train its employees about ADA compliance or Rehabilitation Act compliance. (*Id.* at 15, 24). It did not designate an employee to handle compliance issues regarding the ADA or the Rehabilitation Act. (*Id.* at 19-20).

In 2012, Smith suffered from impaired mobility, dementia, cognitive issues, and pain. (Doc. # 52-3 at 16-17). Forest Manor recognized that Smith faced an increased risk of falls due to her weakness, dementia, depression, and hypoglycemia. (*Id.* at 17-18). Forest Manor personnel instituted several measures to reduce Smith's risk of falling, including the following: (1) using side rails on her bed, bed alarms, and chair alarms, (2) monitoring her more closely when she was confused, restless, or ill, (3) conducting regular safety checks, (4) encouraging her to wear non-skid socks, (5) applying Dycem, a non-slip material, to her wheelchair, (6) using a gait belt when moving her from her bed to a wheelchair, and (7) applying a non-skid strip to the floor between her bed and her fridge. (*Id.* at 18; Doc. # 52-6 at 77-78).

In March 2013, Terri Ryland, an occupational therapist, performed an occupational therapy assessment to assess Smith's mobility. (*See* Doc. # 48-3 at 1-2, 17). At that time, Smith could not propel herself in the wheelchair she was using because its wheels were too small and Smith could not operate its back wheel brakes. (*Id.* at 2). Ryland determined that Smith could propel a wheelchair by herself if she used her upper and lower extremities. (*Id.*). Accordingly, in April 2013, Ryland instructed Forest Manor employees to provide Smith a standard 18-inch wheelchair without leg rests. (*Id.* at 2-3, 7). Ryland explains that foot rests were inadvisable at

that time because they would have increased Smith's risk of falling or tearing her skin while propelling herself with her feet. (*Id.* at 3).

In April 2015, Smith fell and fractured her right hip. (Doc. # 52-9 at 6, 13). The Rule 56 record contains no evidence specifying the cause of that fall. Plaintiff also fell once in June 2015 and twice in August 2015. (Doc. # 52-3 at 10).

On December 18, 2015, Smith fell from her wheelchair while being transported by Defendant Madonna Fulgham. (Docs. # 52-4 at 76, 83; 52-17). Fulgham saw Smith at a nurse's station and transported her to her activities. (Doc. # 52-12 at 25). Fulgham observed a substance on Smith's shirt and decided to transport her to her room. (*Id.*). During the trip to Smith's room, she fell from the wheelchair. (*See id.* at 25-26). The parties dispute the cause of Smith's fall. Smith rode in a standard 18-inch wheelchair with no foot rests installed at the time of the incident. (Docs. # 52-4 at 45; 52-8 at 3). Fulgham did not use a seat belt or lap buddy to prevent Smith from falling out of the chair. (*Id.* at 4). At the time of the fall, Fulgham had not worked regularly with Smith. (Doc. # 52-12 at 23-24). Fulgham was unaware of Smith's high fall risk and had not seen the star placed above her door to signal her high fall risk. (*See id.* at 23).

Dr. Grier Stewart, Forest Manor's medical director, has testified that Forest Manor did not install foot rests on Smith's wheelchair because "[s]he was able to propel herself with her feet while sitting in the wheelchair." (Doc. # 52-1 at 13, 44). He has explained that Forest Manor personnel were not permitted to use restraints, and a lap belt or seatbelt would have qualified as a restraint. (*Id.* at 79-80). Similarly, Takiesha Howard, Forest Manor's assistant director of nursing, has testified that Forest Manor employees were prohibited from using a restraint unless a doctor ordered the restraint. (Doc. # 52-4 at 16, 28-29). She also has testified,

though, that Forest Manor personnel were not prohibited from placing foot rests on Smith's wheelchair.[2] (*Id.* at 32).

After Smith's December 2015 fall, Forest Manor personnel sent her to a hospital. (Doc. # 52-3 at 9). Smith suffered a hand laceration, head injury, and broken nose. (*Id.*). On December 20, 2015, Forest Manor readmitted Smith. (*Id.*). On December 22, 2015, Forest Manor staff modified Smith's fall prevention protocol and instructed its personnel to place foot rests on her wheelchair when pushing the chair. (*Id.* at 14). Howard has recalled that Forest Manor instituted the new protocol at the request of Smith's family. (Doc. # 52-4 at 35-36).

Smith died in February 2018. (Doc. # 55). In April 2018, Plaintiff Estate of Blanchia Smith filed a Third Amended Complaint to substitute itself as the proper plaintiff in this action. (Doc. # 59).

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the

---

[2] The parties dispute the effect of Stewart's and Howard's testimony about Forest Manor's procedures. Defendant Forest Manor claims that it never used foot rests if a resident was able to propel him or herself in a wheelchair. (Doc. # 47 at 6-7). In response, Plaintiff claims that foot rests were not explicitly prohibited by Forest Manor for residents who could propel themselves. (Doc. # 52 at 8). When viewed in Plaintiff's favor, the Rule 56 evidence does not show that Forest Manor had a uniform policy on when foot rests were to be installed on residents' wheelchairs.

pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be

granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## III.    Analysis

Plaintiff raises negligence, wantonness, and breach of contract claims against Defendants Forest Manor and Fulgham. (Doc. # 59 at ¶¶ 11-18). Plaintiff also claims that Forest Manor violated § 504 of the Rehabilitation Act of 1973 and Title III of the Americans with Disabilities Act ("ADA"). (*Id.* at ¶¶ 19-30). Defendant Forest Manor argues that the court should grant summary judgment on the ADA, Rehabilitation Act, and breach of contract claims asserted against it. And, it contends that the court should decline to continue exercising supplemental jurisdiction over Plaintiff's state-law claims and dismiss them without prejudice. The court begins its analysis by determining whether -- in light of the Rule 56 evidence presented by the parties -- a triable federal-law claim exists.

**A.     Defendant Forest Manor is Entitled to Summary Judgment on Plaintiff's Rehabilitation Act and ADA Claims**

To obtain relief under § 504 of the Rehabilitation Act, a plaintiff must prove that he or she (1) is disabled under the Rehabilitation Act, (2) was "otherwise qualified" for a program or activity, (3) was excluded from the program or activity solely because of the disability, and (4) sought to use a program or activity "operated by an agency that receives federal financial assistance." *Harris v. Thigpen*, 941 F.2d 1495, 1522 (11th Cir. 1991). Defendant Forest Manor does not contest that Smith was disabled or that it receives federal financial assistance, but it challenges the other two elements of Plaintiff's Rehabilitation Act claim.

Title III of the ADA provides that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). To prevail on a Title III claim, a plaintiff must demonstrate: "(1) that she is an individual with a disability; (2) that defendant is a place of public accommodation; and (3) that defendant denied her full and equal enjoyment of the goods, services, facilities or privileges offered by defendant (4) on the basis of her disability." *Schiavo v. Schiavo*, 358 F. Supp. 2d 1161, 1165 (M.D. Fla.), *aff'd*, 403 F.3d 1289 (11th Cir. 2005). Defendant Forest Manor does not dispute that Smith was an individual with a disability or that it is a public accommodation. Title III defines discrimination to include both (1) a failure to make reasonable modifications to practices or procedures when necessary to afford services, facilities, or accommodations to individuals with disabilities and (2) a failure to provide "auxiliary aids and services" that may be necessary to ensure that an individual with a disability is not excluded. 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii). If a plaintiff raises a failure to accommodate claim, the

defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff specifically demands an accommodation. *Rylee v. Chapman*, 316 F. App'x 901, 906 (11th Cir. 2009) (citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999)).

"Discrimination claims under the ADA and the Rehabilitation Act are governed by the same standards." *J.S., III v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017). "Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa." *Cash v. Smith*, 231 F.3d 1301, 1305 n. 2 (11th Cir. 2000).

### i. Plaintiff Lacks Standing to Seek Injunctive Relief Under the ADA or the Rehabilitation Act, and Smith's Request for Injunctive Relief is Moot

In the Third Amended Complaint, Plaintiff seeks an injunction that would require Defendant Forest Manor to provide appropriate wheelchairs, transportation equipment, and training to its staff about the use of transportation equipment. (Doc. # 59 at ¶ 32). Defendant Forest Manor argues that Plaintiff, the Estate of Blanchia Smith, lacks standing for injunctive relief because it cannot show a real and immediate threat of future injury to Smith or the Estate. (Doc. # 54 at 8-9). Plaintiff insists that standing still exists for injunctive relief because (1) the injuries that Smith suffered are capable of repetition due to Forest Manor's failure to recognize or comply with its obligations under the ADA and the Rehabilitation Act, (2) Forest Manor is likely to continue violating the ADA and Rehabilitation Act, (3) Smith had Article III standing to seek injunctive relief at the time this suit was filed, and (4) an exception to the standing requirements is warranted for residents of nursing homes because most of them are elderly and disabled. (Doc. # 52 at 30-31). The court agrees with Defendant that Plaintiff's request for injunctive relief has been mooted by Smith's death.

To establish standing for injunctive relief, a plaintiff "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (internal quotation marks omitted). Standing for injunctive relief depends on "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Id.* at 1334 (internal quotation marks omitted). For ADA standing issues, the court examines "the frequency of the plaintiff's visits to the defendant's business and the definitiveness of the plaintiff's plan to return." *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 832 (11th Cir. 2017). When an individual plaintiff dies, his or her claims for injunctive relief become moot. *Gaylor v. N. Springs Assocs., LLLP*, 648 F. App'x 807, 811 (11th Cir. 2016) (citing *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988), and 13C Charles A. Wright, et al., Federal Practice and Procedure § 3533.3.1 (3d ed.)).

The Estate of Blanchia Smith has not explained how it will be affected by Defendant's conduct in the future, and it is clear to the court that it lacks standing to seek injunctive relief. *Houston*, 733 F.3d at 1328. Smith's individual claims for injunctive relief became moot when she died. *Gaylor*, 648 F. App'x at 811. Plaintiff argues that injunctive relief is justified regardless because the alleged unlawful conduct is capable of repetition due to Defendant's disregard of its ADA and Rehabilitation Act obligations. But, the "capable-of-repetition" exception to mootness is inapplicable here because there is not a reasonable expectation that *Plaintiff* will be subjected to the same purported ADA or Rehabilitation Act violation again. *See Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1256 (11th Cir. 2001) (stating that this "narrow" exception to mootness requires a reasonable expectation that "the same complaining party will be subject to the same action again"). Moreover, Plaintiff cannot establish standing to pursue injunctive relief based on potential claims by other residents of Forest Manor because this case is

not a class action and does not involve a formal aggregation of claims. *Cf. United States v. Sanchez-Gomez*, 138 S. Ct. 1532 (2018) (holding that a challenge to a restraint procedure by four criminal defendants could not be saved from mootness through a "functional class action" theory). Therefore, Smith's prior claims for injunctive relief are now moot, and the Estate lacks standing to seek injunctive relief under the ADA or the Rehabilitation Act. The request for injunctive relief is due to be dismissed as moot, but Plaintiff retains standing to seek monetary damages for the alleged ADA and Rehabilitation Act violations.

> **ii. Contrary to Defendant's Contention, This Case Does Not Present a Pure Medical Treatment Decision Beyond the Scope of the ADA and the Rehabilitation Act**

In its summary judgment motion, Defendant Forest Manor first reprises its earlier-made argument that the Rehabilitation Act and ADA claims fail because Plaintiff essentially challenges a medical decision. (Doc. # 47 at 9-13). Plaintiff responds that the deficiencies at issue are transportation deficiencies, not deficiencies in medical care or medical decisionmaking. (Doc. # 52 at 14-20). The court has carefully reviewed Forest Manor's additional arguments and evidence on this point, but still concludes that the issues presented by Plaintiff fall within the scope of the ADA and the Rehabilitation Act.

Under Eleventh Circuit precedent, a Rehabilitation Act or ADA claim cannot be based on a medical treatment decision. *See, e.g.*, *Schiavo v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) (holding that the Rehabilitation Act and the ADA are not intended to apply "to decisions involving the termination of life support or medical treatment"). Nevertheless, hospitals and other medical facilities are subject to the Rehabilitation Act and ADA, and they face certain duties under those statutes. *See, e.g.*, *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 342-44 (11th Cir. 2012) (concluding that a hospital could violate the Rehabilitation Act by failing to

provide appropriate and necessary auxiliary hearing aids to a patient with extensive hearing loss). Defendant Forest Manor contends that it assigned a wheelchair to Plaintiff based on a medical professional's instructions, and, thus, its assignment of the wheelchair falls outside the scope of the ADA and Rehabilitation Act. But, in so arguing, Forest Manor stretches its cited authority too thin.

In *Schiavo*, the plaintiffs sued a hospice center, among other defendants, to prevent the withholding of a feeding tube. *See* 403 F.3d at 1299-1300. The Eleventh Circuit held that the plaintiffs failed to state a Title III ADA claim against the hospice provider because the hospice provider acted pursuant to a court order, rather than because of the patient's disabilities. *Id.* at 1294, 1299. The Eleventh Circuit also held that a Rehabilitation Act claim against the hospice provider failed because the patient was not "otherwise qualified" for the feeding tube plaintiffs requested, as she would not have needed it but for her medical condition. *Id.* at 1294, 1300. Moreover, it explained that "[t]he Rehabilitation Act, like the ADA, was never intended to apply to decisions involving the termination of life support or medical treatment." *Id.* at 1294. *Schiavo* is distinguishable from this case because the ADA and Rehabilitation Act claims there concerned a purely medical decision: whether the patient should receive nutrition and hydration through a feeding tube.[3] Here, in contrast, decisions by Forest Manor employees concerning how to transport Smith were not purely medical matters, even though an occupational therapist played some role in determining what type of wheelchair Smith used. Non-medical personnel were qualified to make several decisions pertaining to Smith's transportation, such as whether

---

[3] This distinction also sets this case apart from *United States v. University Hospital, State University of New York at Stony Brook*, 729 F.2d 144 (2d Cir. 1984), in which the Second Circuit held that the Rehabilitation Act did not regulate the provision of medical services to newborn infants with disabilities. *Id.* at 161. In *University Hospital*, the Second Circuit questioned whether Congress intended to interfere with medical treatment decisions for children when passing the Rehabilitation Act because the field of child care "has traditionally been occupied by the states." *Id.* at 160.

she needed to be assisted at a particular time, the speed at which she should be pushed if assistance was needed, and whether she was in a condition to be transported safely. Ryland's occupational therapy recommendations do not immunize all of Forest Manor's transportation decisions from ADA and Rehabilitation Act requirements (although, as discussed later, they are relevant to determining whether Forest Manor discriminated against Smith on the basis of her disability).

Defendant Forest Manor's persuasive authority also addresses purely medical decisions that are distinguishable from the matter before the court. In *Burger v. Bloomberg*, 418 F.3d 882 (8th Cir. 2005), the plaintiff claimed that the South Dakota Department of Corrections, a hospital association, and two medical professionals violated the Rehabilitation Act by providing inadequate medical care for a decedent's diabetes. *Id.* at 883. The Eighth Circuit, agreeing with *Schiavo*, held that the Rehabilitation Act and the ADA did not create liability for medical treatment decisions. *Id.* But, diabetes treatment decisions are distinguishable from the transportation decisions challenged here. Similarly, in *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134 (10th Cir. 2005), the plaintiff claimed that he suffered a seizure due to a prison's inadequate treatment of his diabetes. *Id.* at 1136. He sued a doctor under the ADA and the Rehabilitation Act for his recommendation that prison officials could acceptably provide no treatment for a fractured femur, although surgery was the preferable option. *Id.* at 1136-37, 1143-44. The Tenth Circuit held that the doctor's recommendation constituted "the sort of purely medical decision[ ] that we have held do[es] not ordinarily fall within the scope of the ADA or the Rehabilitation Act." *Id.* at 1144. It recognized that the Seventh Circuit had foreclosed the application of the ADA or the Rehabilitation Act to "alleged medical negligence." *Id.* Again, the doctor's conduct at issue in *Fitzgerald* -- a recommendation of proper treatment

for a fractured bone -- is distinct from the nursing home's conduct in providing appropriate transportation, even though transportation decisions by a nursing home necessarily are influenced by a resident's medical conditions.

The discriminatory conduct at issue in *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996), is more closely analogous to the conduct at issue here, but *Bryant* is distinguishable due to the type of facility in which the alleged ADA violation occurred. In that case, a prisoner sued prison officials for failing to provide guardrails for his bed; the prisoner fell from the bed and suffered a broken leg. *Id.* at 247. The Seventh Circuit held that the prisoner failed to state an ADA claim because the ADA did not cover a prison's obligations "to attend to the medical needs of its disabled prisoners." *Id.* at 249. It observed that the plaintiff-prisoner did not complain that the prison had foreclosed his access to a service, program, or activity offered to non-disabled prisoners. *Id.* And, it reasoned that it "would be extremely odd" for a disabled prisoner to be able to raise a medical malpractice claim under the auspices of the ADA when a non-imprisoned individual would be limited to state-law remedies for such conduct. *Id.* The *Bryant* opinion acknowledged a circuit split on the question of whether the ADA applies to prisons, and it questioned whether Congress intended to provide disabled prisoners with ADA protections where prisoners did not receive the benefits of various constitutional rights while in prison. *Id.* at 248. None of the policy rationales against extending ADA liability to the prison defendants in *Bryant* apply here. Therefore, the court is not persuaded that *Bryant*'s analysis controls this case.

Because the court disagrees with Defendant Forest Manor's first argument for summary judgment on the ADA and Rehabilitation Act claims, it turns to addressing the merits of the claims.

### iii. Smith Was Not Denied a Benefit Guaranteed by the ADA or the Rehabilitation Act, and She Did Not Request a Reasonable Accommodation

In its summary judgment brief, Defendant Forest Manor claims that it did not discriminate against Smith because the disabling condition Smith suffered was related to the condition being treated by Forest Manor. (Doc. # 47 at 15). Additionally, Forest Manor insists that it did not install foot rests on Smith's wheelchair because (1) they could have contributed to a fall, and (2) Ryland recommended against installing foot rests. (*Id.*). Plaintiff offers two arguments to support this element of the ADA and Rehabilitation Act claims. First, Plaintiff argues that Forest Manor failed to provide necessary auxiliary aids when it failed to install foot rests or, alternatively, a lap restraint on Smith's wheelchair. (Doc. # 52 at 22-23). Second, Plaintiff contends that Forest Manor failed to adopt adequate policies for ADA and Rehabilitation Act compliance and failed to adequately train its staff. (*Id.* at 23-24).

After careful review, the court concludes that Plaintiff fails to present a triable claim that Defendant Forest Manor improperly denied Smith an auxiliary aid. For purposes of the ADA, an auxiliary aid is defined to include:

(1) Qualified interpreters on-site or through video remote interpreting (VRI) services; notetakers; real-time computer-aided transcription services; written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning, including real-time captioning; voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing;

(2) Qualified readers; taped texts; audio recordings; Brailled materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP); large print materials; accessible electronic

and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision;

(3) Acquisition or modification of equipment or devices; and

(4) Other similar services and actions.

28 C.F.R. § 36.303(b). Auxiliary aids are defined to include "aids for persons with impaired hearing or vision" in the regulations pertaining to the Rehabilitation Act as well. 45 C.F.R. § 84.52(d)(3). The Department of Justice has explained that the auxiliary aid duty in Title III of the ADA "does not require public accommodations to provide assistance to individuals with disabilities that is unrelated to effective communication, although requests for such assistance may be otherwise subject to the reasonable modifications or barrier removal requirements." Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 75 Fed. Reg. 56236-01, 56280 (Sept. 15, 2010) (discussing 2010 amendments to 28 C.F.R. § 36.303).

Here, Plaintiff cannot show that Defendant Forest Manor denied Smith an auxiliary aid because the transportation aids at issue do not qualify as auxiliary aids under Title III of the ADA or the Rehabilitation Act. The regulations quoted above demonstrate that auxiliary aids include aids for effective *communication*, not aids for effective *transportation*. 28 C.F.R. § 36.303(b); 45 C.F.R. § 84.52(d)(3). Plaintiff has not cited -- and the court's independent research has not found -- authority for expanding the duty to provide auxiliary aids to establish a duty to provide wheelchair equipment needed for safe transportation. As the Department of Justice's commentary suggests, an entity subject to Title III of the ADA or the Rehabilitation Act might be required to provide such aids as a reasonable accommodation, but not as an auxiliary aid. Nondiscrimination on the Basis of Disability, 75 Fed. Reg. at 56280. Moreover, to the extent that Plaintiff's arguments in the opposition brief can be construed liberally as a failure to

accommodate claim, any failure to accommodate claim under the ADA or the Rehabilitation Act fails because neither Smith nor an individual acting on her behalf demanded the installation of foot rests or the provision of a lap restraint as an accommodation for a disability prior to the December 2015 fall.[4] *Rylee*, 316 F. App'x at 906.

Plaintiff's argument that Forest Manor excluded Smith from its services or denied her a benefit by failing to adequately train its employees on the ADA and the Rehabilitation Act fails because Forest Manor did not violate Smith's ADA or Rehabilitation Act rights by failing to install foot rests or provide a lap restraint. Plaintiff has not argued for a freestanding ADA or Rehabilitation Act claim premised solely on Forest Manor's failure to train personnel and failure to designate compliance officers.[5] Rather, Plaintiff asserts that Forest Manor's failure to train would be actionable if it were causally connected to an underlying instance of disability discrimination. (*See* Doc. # 52 at 23). For the reasons discussed above, Forest Manor did not violate any of its obligations under the ADA or the Rehabilitation Act by failing to install foot rests onto Smith's wheelchair or by failing to provide a lap restraint. Accordingly, Plaintiff's failure to train claim also fails.

---

[4] Plaintiff also points out in its opposition brief that Forest Manor was obligated to provide safe and appropriate transportation to Smith under 42 C.F.R. § 483.10. (Doc. # 52 at 24). But, that regulation concerns Forest Manor's duties under the Social Security Act, not the Rehabilitation Act or the ADA. *See* 42 C.F.R. § 483.1(a) (explaining that the regulations in the relevant subpart of the Code of Federal Regulations are based on the "Act"); 42 C.F.R. § 400.200 (defining "Act" in the relevant chapter of the Code of Federal Regulations to be the Social Security Act).

[5] To be clear, if Plaintiff is arguing for a freestanding failure to train claim, then Plaintiff has offered no authority for such a claim. Plaintiff cites *Bates ex rel. Johns v. Chesterfield County, Virginia*, 216 F.3d 367, 373 n. 3 (4th Cir. 2000), to support the failure to train claim. But, the Fourth Circuit summarily rejected the failure to train claim in *Bates* because it held that the defendant officers did not discriminate against the plaintiff by reason of his disability. *Id.* It did not discuss a freestanding failure to train claim under the ADA or suggest that such a claim is viable.

### iv. Alternatively, Plaintiff Has Failed to Establish a Triable Issue of Fact about Whether Animus Against Her Disability Caused Forest Manor to Withhold Foot Rests or Restraints

Defendant Forest Manor argues that it determined what transportation equipment to use based on the occupational therapist's recommendation, not based on discriminatory animus towards Smith. (Doc. # 47 at 16-17). Plaintiff responds that Forest Manor acted by reason of Smith's disability because she was eligible for its services regardless of her mobility limitations, it was responsible for providing safe and appropriate transportation, and it provided services to residents without mobility limitations for which Smith required auxiliary aids. (Doc. # 52 at 24-25).

Under the Rehabilitation Act, a plaintiff must show that unlawful discrimination occurred solely because of his or her disability. 29 U.S.C. § 794(a); *Severino v. N. Fort Myers Fire Control Dist.*, 935 F.2d 1179, 1182 (11th Cir. 1991). Title III of the ADA prohibits a public accommodation from discriminating "on the basis of disability." 42 U.S.C. § 12182(a). The Eleventh Circuit has interpreted this language to establish a lower "but-for" causation standard for ADA claims. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n. 6 (11th Cir. 2008) (discussing this distinction between ADA and Rehabilitation Act claims); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1073-77 (11th Cir. 1996) (discussing Titles I, II, and IV of the ADA, and holding that "the ADA imposes liability whenever the prohibited motivation makes the difference in the employer's decision"). That is, to succeed on an ADA claim, a plaintiff must show that the defendant's discriminatory actions would not have occurred but for the plaintiff's disability.

Here, undisputed Rule 56 evidence demonstrates that Forest Manor personnel had a reason other than Smith's disability for not installing foot rests on her wheelchair and not using a

lap restraint. It is clear that Ryland recommended a wheelchair without foot rests for Smith in 2013. (Doc. # 48-3 at 2-3, 7). And, Stewart has testified that foot rests were not installed because Smith was able to propel her own wheelchair. (Doc. # 52-1 at 44). Similarly, undisputed testimony reveals, at a minimum, that Forest Manor personnel believed a doctor's order was necessary before a resident could be secured with a lap restraint. (Doc. # 52-4 at 28-29). The court previously has questioned Defendant Forest Manor's interpretation of a statute requiring doctor's orders for certain physical restraints, at least insofar as restraints are used for safety purposes rather than discipline or convenience. (*See* Doc. # 33 at 7 n. 2) (discussing 42 U.S.C. § 1395i-3(c)(1)(A)(ii)). Nevertheless, a honest belief that a doctor's orders were needed for a lap restraint still constitutes a reason other than discriminatory intent for not providing one to Smith before her fall. For these reasons, Plaintiff cannot prevail on her Rehabilitation Act count because Smith's disability was not the sole reason for Forest Manor's failure to use foot rests or a lap restraint.

Similarly, a reasonable jury could not find from the Rule 56 evidence that Smith's disability was the but-for cause of Defendant Forest Manor's failure to provide foot rests or lap restraints to Smith before the December 2015 fall. Ryland's testimony and records show that she recommended a wheelchair without foot rests for Smith, and Forest Manor personnel acted in accordance with that recommendation. Moreover, Forest Manor personnel believed that a lap restraint could only be used when recommended by a doctor, and a doctor never ordered that such a restraint be used when transporting Smith. Certainly, this case raises a substantial question about whether the failure to use foot rests or a lap restraint was negligent and/or wanton

conduct, but the court finds no Rule 56 evidence upon which a reasonable jury could find that Forest Manor's failures were caused by disability discrimination.[6]

**B.    The Court Declines to Continue Exercising Supplemental Jurisdiction Over Plaintiff's State-Law Claims**

Plaintiff raises negligence, wantonness, and breach of contract claims against Defendants Forest Manor and Fulgham, in addition to the federal-law claims.  (Doc. # 59 at ¶¶ 11-18). Plaintiff relies on federal-question jurisdiction as the basis for filing this case in federal court, and asserts that the court has supplemental jurisdiction over the state-law claims.  (Doc. # 59 at ¶¶ 1-2).  Under 28 U.S.C. § 1331, a district court has subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  Because Defendant Forest Manor is entitled to summary judgment on the ADA and Rehabilitation Act claims, no federal-law claim remains in this action.  Moreover, diversity jurisdiction is inapplicable because the parties are alleged to be non-diverse.  (Doc. # 59 at ¶¶ 4-6).  Therefore, the court must decide whether it is appropriate to retain supplemental jurisdiction over Plaintiff's state-law claims.

The court has discretion to decline supplemental jurisdiction over state-law claims once all claims over which the court had original jurisdiction are dismissed.  28 U.S.C. § 1367(c)(3). In exercising its discretion, the court considers "concerns of comity, judicial economy, convenience, fairness, and the like."  *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1267 (11th Cir. 2001) (internal quotation marks omitted) (quoting *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999)).  Indeed, the Eleventh Circuit has encouraged district courts to decline supplemental jurisdiction when the federal-law claims are dismissed prior to trial.  *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

---

[6]  The court need not address -- and does not address -- whether Plaintiff has presented a triable issue of deliberate indifference that would allow for an award of monetary damages.

Here, the court finds that it is appropriate to not exercise supplemental jurisdiction over the remaining claims. The court is guided by the Eleventh Circuit's encouragement to decline supplemental jurisdiction when federal-law claims are dismissed before trial. *Raney*, 370 F.3d at 1089. Moreover, the court recognizes that "[s]tate courts, not federal courts, should be the final arbiters of state law." *Flippo v. Am. Power Source, Inc.*, 20 F. Supp. 3d 1299, 1319 (N.D. Ala. 2014) (citing *Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992)). Although the outcome of this issue is not controlled by the comity doctrine, the court's ruling is certainly consistent with principles of comity. Accordingly, the court declines to continue exercising supplemental jurisdiction over the state-law claims, and concludes that they are due to be dismissed without prejudice so that they may be refiled in state court. Because the exercise of supplemental jurisdiction is inappropriate at this juncture, the court declines to rule on Defendant Forest Manor's request for summary judgment on Count II of the Third Amended Complaint.

## IV. Conclusion

For the reasons explained above, Defendant Forest Manor's Motion for Summary Judgment (Doc. # 47) is due to be granted in part. Defendant Forest Manor is entitled to summary judgment on the Rehabilitation Act and ADA claims in Counts III and IV of the Third Amended Complaint. Because the court declines to continue exercising supplemental jurisdiction over the state-law claims, Plaintiff's claims in Counts I and II of the Third Amended Complaint are due to be dismissed without prejudice so that they may be refiled in state court. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this June 8, 2018.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE